# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 116 | **DATE** | 5/12/2003 |
| **CASE TITLE** | Eden vs. Robert A. Chapski, Ltd. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

## DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: We affirm the Bankruptcy Court's order. The status hearing set for 5/20/03 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | MAY 14 2003 | | |
| | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| | | | 5/12/2003 | | |
| GL | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | GL | | |
| | | | mailing deputy initials | | |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re )<br><br>LARRY N. EDEN, )<br><br>            Debtor )<br><br>_____<br><br>LARRY N. EDEN, )<br><br>            Plaintiff, )<br><br>     v. )<br><br>ROBERT A. CHAPSKI, LTD., )<br><br>            Defendant. ) | Case No. 03 CV 00116<br><br>**DOCKETED**<br>**MAY 1 4 2003** |

<u>MEMORANDUM OPINION AND ORDER</u>

MARVIN E. ASPEN, District Judge:

Currently before us is debtor Larry Eden's ("Eden") appeal of the Bankruptcy Judge's

November 26, 2002 order stating that funds tendered to creditor Robert Chapski ("Chapski") were

not property of the bankruptcy estate and, therefore, were not protected by the automatic stay

provisions of 11 U.S.C. §362. For the following reasons, we affirm the order of the Bankruptcy

Judge.

**I. Background**

On February 20, 1996, Eden filed a petition for relief under Chapter 13 of the bankruptcy

code. Chapski was included in the list of unsecured creditors in Eden's Schedule F as the holder of

a contingent and disputed claim for attorney's fees in the amount of $40,000.00. At the time of filing

the Bankruptcy petition, Eden was involved in a dissolution of marriage proceeding in Illinois state court. The dissolution of marriage proceedings continued in the state court during the pendency of Eden's bankruptcy case. Chapski represented Eden's wife, Jean, in the dissolution proceedings.

On August 2, 1996, Bankruptcy Judge Squires confirmed Eden's Second Amended Chapter 13 Plan. Under the terms of the plan, Eden was to make payments of $1,088.00 a month over a term of sixty months. Among other provisions, the plan provided that "[p]roperty of the estate shall re-vest in the debtor upon confirmation of the plan." Eden was also required to submit to the Trustee "all or such portion of his future income and earnings...as is necessary for the execution" of the plan. The plan was to be funded initially with a lump sum payment of $5,000 received as a refund from the IRS. Thereafter, "Debtor, Debtor's employer, or other entity shall remit the sum of $1,088.00 per month to the Trustee for the benefit of creditors during the term of this plan." The plan did not identify the source of the funds that would be used to make monthly payments to the Trustee.

On August 5, 1997, approximately one year after confirmation of Eden's Chapter 13 plan, an Illinois state court entered a judgment dissolving Eden's marriage. The Judgement of Dissolution contained a provision ordering Eden to his ex-wife's attorney's fees in the amount of $17,500 ("the pre-dissolution fees"). The pre-dissolution fees were payable jointly to Eden's ex-wife and to Chapski. Eden appealed the Judgment of Dissolution in the Illinois Appellate Court. On December 18, 1997, the court entered an order awarding attorney's fees to Eden's ex-wife in connection with her defense of the appeal ("prospective fee order"). The prospective fee order required Eden to pay Chapski $2,500.00 by April 18, 1997.

Eden failed to pay the amounts due under the Judgment of Dissolution and prospective fee order. On October 5, 1998, Chapski filed a fee application in the State Court requesting $8,964.25

for work done on Eden's appeal from the Judgment of Dissolution. Those fees ("post-dissolution fees") all relate to services rendered by Chapski after Eden filed his bankruptcy petition. On October 8, 1998, Eden filed a motion to enforce automatic stay in which he asked the Bankruptcy Court enjoin Chapski's efforts to collect both the pre-dissolution and post-dissolution fees. On October 27, 1998, Chapski's motions came before the state court for hearing. At the commencement of the proceedings, the state court judge announced that because of Eden's bankruptcy and the pending Motion to Enforce Stay, he would consider only the rule to show cause entered upon Eden's failure to comply with the prospective fee order. The state court ultimately found Eden in indirect civil contempt of court. On November 16, 1998, Eden filed a Verified Complaint for Injunction and an Emergency Motion for Injunction in the Bankruptcy Court. Eden complained that although the issue of whether Chapski could collect the post-dissolution fees was under advisement by the bankruptcy court, Chapski had continued his efforts to collect the prospective fee award through contempt proceedings in the state court. Eden argued that his wages were the only source of funds available to him to pay the amount awarded to Chapski by the state court. Thus, Eden argued, there was no non-estate property which he could use to satisfy the state court judgment.

On December 8, 1988, the state court entered an agreed order between Eden, his ex-wife, and Chapski. The agreed order stated that Eden had tendered to Chapski $2500.00 and that Chapski had deposited that sum into the Chapski Trust Account. In addition, Eden deposited $1200.00 into the Trust Account to cover a portion of Chapski's attorney's fees and costs that might be incurred as a result of the bankruptcy proceedings.

On November 12, 1999, Eden filed a motion for turnover of the funds in the Chapski Trust Account, alleging that the money in the trust account came from his wages. According to the

Bankruptcy Court, however, Eden did not present live witness testimony or other evidence to establish that fact. Chapski and Jean did not present to the Bankruptcy Court evidence that the funds in the Chapski Trust Account were property of the estate.

The Bankruptcy Judge found that the funds in the Chapski Trust Account were deposited on account of the Debtor's failure to comply with the prospective fee order. The Judge found that because the prospective fee order was entered after Eden filed his bankruptcy petition, Eden's obligation to pay those fees is post-petition debt. The Judge further found that the bankruptcy estate included only so much of Eden's income as was needed to execute his Chapter 13 plan. Because Eden failed to present evidence concerning the sources and amount of his income, the Court found that he could not establish that payment of the fees to Chapski interfered with his fulfillment of the plan. The Bankruptcy Judge therefore found that Eden did not carry his burden of establishing that the funds in the Chapski Trust Account came from Eden's bankruptcy estate. Eden now appeals the decision of the Bankruptcy Court, and argues that the payments to Chapski constituted wages under 11 U.S.C. §1306 and, therefore, protected property of the bankruptcy estate under 11 U.S.C. §362.

## II. Analysis

In a bankruptcy appeal, we examine the Bankruptcy Judge's factual findings for clear error and its legal conclusions *de novo*. *See Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir. 1994); *Aetna Bank v. Dvorak*, 176 B.R. 160, 163 (N.D. Ill. 1994). We also review *de novo* mixed questions of fact and law. *See In re Rovell*, 232 B.R. 381, 386 (N.D. Ill. 1998). *De novo* review requires the district court to make an independent examination of the Bankruptcy Court's judgment without giving deference to that court's analysis or conclusions. Because the question before us is one of fact and law we review the findings of the Bankruptcy Judge *de novo*. The Bankruptcy Judge held, and we

agree, that the transfer from Eden to Chapski was not property of the bankruptcy estate and, therefore, was not protected by the automatic stay provisions of 11 U.S.C. §362.

A Chapter 13 debtor may bring an action for turnover to recover funds or other assets belonging to his or her estate. *Lauria v. Titan Security, Ltd.*, 243 B.R. 705, 708 (Bankr. N.D. Ill. 2000). The debtor seeking turnover has the burden of proof in such an action. *In re Rosenzweig*, 245 B.R. 836, 840 (Bankr. N.D. Ill. 2000). According to the Bankruptcy Code, property of the estate is defined as of the date when a debtor's bankruptcy petition is filed. *See* 11 U.S.C. 541; *see also In re Carousel Int'l Corp.*, 89 F.3d 359, 362 (7th Cir. 1996). Although "earnings from services performed by an individual debtor after commencement of the case" are generally excluded from property of the estate, 11 U.S.C. §541(a)(6), the definition of property of the estate is modified by §1306(a) in Chapter 13 cases. *See Montclair Property Owners Ass'n, Inc. v. Reynard*, 250 B.R. 241, 245 (Bankr. E.D. Va. 2000). Section 1306(a) provides that:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title–
> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

11 U.S.C. §1306(a). Reading §1306 alone, it would appear that all property acquired by Eden, including his wages, were the property of the bankruptcy estate and, therefore, subject to the automatic stay provisions of §362.

We cannot, however, read §1306 in a vacuum. Also relevant is §1327(b), which provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. §1327(b).

In *Black v. United States Postal Service (In re Heath)*, 115 F.3d 521 (7th Cir. 1997), the

Seventh Circuit directly addressed the contradictions between §§1306 and 1327. At issue in *Heath*

was whether a new employer's $50 garnishment from a debtor's wages as a one-time service charge

for implementing the wage deduction order in her Chapter 13 case was protected under the automatic

stay provision. The Seventh Circuit held that it was not protected by §362. In rejecting the Chapter

13 trustee's argument that the money was property of the debtor's estate, the court made the

following statements:

> It is true that the Bankruptcy Code says that all the earnings of a Chapter 13 debtor
> are property of the estate. 11 U.S.C. §1306(a)(2). But it also says that "confirmation
> of a plan vests *all* of the property of the estate *in the debtor*" unless the plan provides
> otherwise, §1327(b) (emphasis added), which we think scotches any inference that
> Congress intended to render *all* Chapter 13 debtors legally incompetent to manage
> *any* of their property. We read the two sections, 1306(a)(2) and 1327(b), to mean
> simply that while the filing of the petition for bankruptcy places all the property of
> the debtor in the control of the bankruptcy court, the plan upon confirmation returns
> so much of that property to the debtor's control as is not necessary to the fulfillment
> of the plan.

*Heath*, 115 F.3d at 524. The order of confirmation in *Heath* provided that "the debtor's income and

other assets...remain estate property to the extent necessary to fulfill the plan." *Id.* at 522-23. Based

upon this language, and the court's reading of the bankruptcy statute, the Seventh Circuit determined

that the debtor's estate included only so much of her income or other property as was necessary to

pay off her plan. *Id.* at 524. Because the debtor had not shown that the loss of the $50 fee would

jeopardize the his ability to make payments according to the plan, the court found that the money was

not the property of the estate. *Id.*

Although Eden attempts to distinguish his situation from *Heath*, the cases are analogous. Like

the plan in *Heath*, Eden's plan provides that property of the estate will vest in the debtor upon

confirmation of the plan. Furthermore, the plan requires Eden to submit his future income and

earnings to the control of the Chapter 13 trustee "only as necessary for the execution" of the plan. Under *Heath*, to the extent Eden's wages were not necessary to fulfill his $1088.00 monthly payment to the bankruptcy trustee, they were not the property of the bankruptcy estate. Eden did not present either the Bankruptcy Court or this Court with evidence that the payments to Chapski interfered with his ability to meet his obligations under the Chapter 13 plan.[1] Rather, Eden argues that the payment to Chapski "could have affected" fulfillment of the plan. Such a vague and unsupported assertion is insufficient to satisfy Eden's burden of proving by that the funds in the Chapski Trust Account were the property of the estate.

## III. Conclusion

For the reasons stated above, we affirm the Bankruptcy Court's order. It is so ordered.

Marvin E. Aspen
District Judge

Dated: 5/12/03

---

[1]Eden argues that *Heath* is distinguishable from the instant case because *Heath* involved a much smaller sum of money. Under our interpretation of *Heath*, the issue is not the amount of money in and of itself, but whether the payment will hinder completion of the plan. Thus, although the present case involves much more money than that involved in *Heath*, the cases are similar in that the debtors in both cases failed to demonstrate that payment of the sums involved would prevent fulfillment of the Chapter 13 plan.